HIGGINS, Justice.
 

 This is a suit by a husband, whose domicile and residence is in the parish of Jefferson, against his wife, a resident of the state of Georgia, for a divorce under the
 
 second
 
 paragraph of article 142 of the Revised Civil Code, as amended by Act No. 1 of the Second Extra Session of the Legislature of Louisiana of 1934. The petition tracks the statute, and there are annexed to it, as a part thereof, certain documents tending to show the applicability of the provisions of the act and compliance therewith.
 

 The defendant filed a plea that the act was unconstitutional, exceptions of no right or cause of action, and a plea to the jurisdiction of the court ratione personae and ratione materiae.
 

 
 *591
 
 The exceptions and pleas were overruled by the judge a quo and the defendant was allowed fifteen days to file her answer.
 

 She did not file an answer, but, on the fourteenth day filed, simultaneously, an exception of prematurity, on the ground that the two-year period of separation provided for in the statute would have to run from the time it became effective, which exception was not passed upon below, and a rule for alimony pendente lite.
 

 The plaintiff filed exceptions of no right or cause of action to the rule for alimony on the following grounds:
 

 “(A).Because this suit is predicated on article 142, R.C.C., as amended by Act No. 1 of 2nd Extra Session of 1934 which grants only to the plaintiff the remedies and conservatory measures granted bylaw to married women.
 

 “(B) That the mover in rule is not plaintiff in this suit, and therefore, is not entitled to the remedies and conservatory measures granted by law to married women.
 

 “(C) Tliat, in order to be entitled to the remedies and conservatory measures, such as alimony, even as plaintiff, the wife must show domicile in this state.”
 

 The district judge overruled the exceptions and plaintiff then applied to this court for writs of certiorari, prohibition, and mandamus, which were granted, and the matter is now before us for consideration.
 

 While respondent in her return to this court questioned, the right of relator to the issuance of the writs, in her brief she states: “ * * * That the court might just as well pass on the question of defendant’s right to alimony now as later.” Of course, the writs were issued under our supervisory jurisdiction and Peeples v. Land, 181 La. 925, 160 So. ,631, in this connection is pertinent.
 

 The returns of the trial judge and the defendant are identical and raise two issues, as follows:
 

 (1) That the exceptions of no right or cause of action to the rule for alimony pendente lite were clearly without merit; and
 

 (2) In the alternative, that the plaintiff was estopped to raise that question, because of the alleged judicial confession that defendant was entitled to alimony pendente lite, which was tendered.
 

 Article 142 of the Revised Civil Code, as amended by Act No. 1 of the Second Extra Session of the Legislature of 1934, reads as follows:
 

 “Whenever a marriage shall have been contracted in this State or elsewhere by parties either of whom are residents of this State and the matrimonial domicile shall have been established in a foreign country or in another state and if the' husband shall have abandoned the wife, in the State of said marriage or elsewhere, or shall behave or have behaved towards his said wife in said foreign country or in said other state, in such manner as will entitle her, under our laws, to demand a separation from bed and board, it shall be lawful for her, on returning to the domicile where said marriage was contracted,
 
 *593
 
 or to her domicile in this State, prior to said marriage, to institute a suit against her said husband for the purpose above mentioned in the same manner as if the parties were domiciliated in such place, any law to the contrary notwithstanding.
 

 “Whenever a marriage shall have been contracted under the laws of and in this state, and there shall be issue of said marriage, and the husband or wife shall'leave this state and secure a divorce in another state through substituted service in such other state, and contract another marriage in another state, of which latter marriage there is no issue,
 
 should the said husband or wife return to this state and remain and live separate and apart for a period of two years
 
 from the spouse acquired in said latter marriage, if the other spouse of said first marriage shall have remained single, either the husband or the wife of the latter marriage shall be entitled to immediate divorce upon said facts being established to the satisfaction of the court, provided both of the parties of the said first marriage shall make and execute a sworn affidavit and present same to the court, evidencing their intention to remarry with proof that there is one or more living and dependent minor children, issue of the said first marriage, dependent upon them for support. In such case
 
 suit may be filed by either the husband or the wife
 
 seeking to secure
 
 divorce
 
 from such latter marriage at their established place of residence in this state, and such person seeking divorce shall be entitled to secure service on the dependent [defendant] either by personal service or by substituted process through appointment of a curator ad hoc to represent such defendant if absent from the state.
 

 "In such cases
 
 an attorney shall be appointed by the Court to represent said absent defendant;
 
 the plaintiff shall be entitled to all the remedies and conservatory measures granted by law to married' women,
 
 and the judgment rendered in such case shall have force and effect in the same manner as if the parties had never left the state
 
 or were both residents thereof.
 

 “Section 2. Be it further enacted, etc., That all laws or parts of laws contrary to or in conflict herewith, be and the same are hereby repealed.” (Italics ours.)
 

 The state has the right through the legislative department to pass laws regulating and concerning marriage, separation from bed and board, and divorce of those residing within its territorial limits.
 

 In the case of Evans v. Evans, 166 La. 145, at page 150, 116 So. 831, 833, in discussing Haddock v. Haddock, 201 U.S. 562, 26 S.Ct. 525, 50 L.Ed. 867, 5 Ann.Cas. 1, we said:
 

 “For Haddock v. Haddock does not deny
 
 the fundamental proposition
 
 that each of the states has the right to establish for its citizens, and for all persons subject to its jurisdiction, its own policy and rules and regulations regarding marriage and divorce.” (Italics ours.)
 

 In Lepenser v. Griffin, 146 La. 584, 83 So. 839, 841, the court quoted from Cooley
 
 *595
 
 in his work on Constitutional Limitations (4th Ed.) at page 502, stating the principle of law as follows:
 

 “We conceive the true rule to be that the actual bona fide residence of either liusband or wife within a state will give that state authority to determine the status ■of such party, and to pass upon questions .affecting his or her continuance in the marriage relation, irrespective of the locality of any alleged offense; and that any ■such court in that state as the Legislature may have authorized to take cognizance •of the subject may lawfully pass upon such questions and annul the marriage.”
 

 In Mathews v. Mathews, 157 La. 930, 103 So. 267, it was held:
 

 “We think it is the uniform and consistent jurisprudence of this state that, where both spouses were nonresidents of Louisiana, and the marriage was not contracted in this state, and the cause of action arose prior to the acquisition of a Louisiana domicile by either, the courts of this state will not entertain suits, instituted by either spouse, for separation from bed and board or for divorce.”
 

 See, also, Mann v. Mann, 170 La. 958, 129 So. 543; Evans v. Evans, 166 La. 145, 116 So. 831; Hockaday v. Hockaday, 182 La. 88, 161 So. 164; Peeples v. Land, supra.
 

 Therefore, all of the general laws on the subject of marriage, separation, and divorce apply to residents or citizens of this state, and all persons subject to its jurisdiction, but not to residents and citizens of other states.
 

 Article 142 of the Revised Civil Code, as amended by Act No. 1 of the Second Extra Session of 1934, under the specific provisions of which the instant suit has been brought, is an exception to the general rule of law with reference to separation and divorce. It is a special statute for a particular class of cases where separation and divorce are not otherwise permitted under the general laws of the state.
 

 In Smithers v. Smithers, 145 La. 752, 82 So. 879, 880, this court held:
 

 “There is only one exception to the rule that a Louisiana court has not jurisdiction of a suit for divorce or for separation from bed and board against a nonresident of the state, for .a cause that occurred in another state at the time when there was no matrimonial domicile in Louisiana. The exception to that rule is found in article 142 of the Civil Code, upon a proper construction of which depends a decision of the question presented by this appeal. * * *
 

 “Article 142, making an exception to a general rule, should not be applied to a case to which its applicability is very doubtful.”
 

 In Lepenser v. Griffin, 146 La. 584, 83 So. 839, syllabus, it was held:
 

 “State may prescribe causes for dissolution as to women who leave husbands and establish domicile in state; authorizing constructive service is not an impairment of contract, divestiture of vested rights, or denial of due process.
 

 “Each state has the right to prescribe the conditions upon which the marital rela
 
 *597
 
 tions of its own citizens shall be created and the causes for and manner in which, by its laws, those relations may be dissolved; and that right extends to women who, having married in other states and
 
 having left t their husbands for lawful causes, have, in good faith, established here such separate domiciles as entitle them to citizenship."
 
 (Italics ours.)
 

 Therefore, article 142 of the Revised Civil Code, as amended, being an exception to the general rule, must be considered first by itself, and any limitations placed therein upon the rights, remedies, and conservatory measures of either party to a suit brought under its provisions must be observed and enforced.
 

 Article 148 of the Revised Civil Code, as amended by Act No. 130 of 1928, providing that alimony shall be allowed the wife whether appearing as plaintiff or defendant,
 
 if she be without sufficient funds to maintain herself during the pendency of the suit for separation or divorce, is a general rule of law relating to separation and divorce proceedings affecting residents or citizens of this state or those within its jurisdiction. Consequently, articles 142 and 148 have no relation to each other, except as specifically provided for in the special law or article 142.
 

 Returning now to the language of article- 142, as amended by Act No. 1 of 1934 (2d Ex.Sess.), it will be observed that the first paragraph was not amended. Article 142 of the Revised Civil Code of 1870 consisted of one paragraph 'composed practically of the first and third paragraphs contained in the statute of 1934. This article was amended by the Legislature when it adopted Act No. 113 of 1920, which placed a two-year prescriptive 'period on the wife’s right to return and establish her residence and domicile here, for the purpose of instituting proceedings under this article, and added “abandonment” as an additional cause for separation from bed and board.
 

 The act also amended the article by adding to the last line thereof the words “or were both residents thereof,” and also by dividing the article into two paragraphs.
 

 In 1934, the Legislature again amended the article by eliminating the two-year prescriptive period placed therein by the act of 1920, added paragraph 2, a new and distinct cause or ground for divorce, and changed the position of paragraph 2 under the article as amended by the act of 1920, so as to immediately follow the newly added paragraph 2.
 

 Since its introduction by Act No. 9 of 1855, the provisions of the first paragraph of article 142, R.C.C., as amended, have been the law of this state. It was designed for the purpose of giving a woman, who was a resident or citizen of this state, a right to secure a separation from bed and board from her husband, who had mistreated her in another country or state where they had lived, when the marriage had been contracted in Louisiana, and she returned to her domicile in this state and there instituted suit against her husband.
 

 The second or new paragraph creates an additional and new ground for divorce and grants to either the husband or wife, un
 
 *599
 
 der the specific circumstances enumerated therein, the right to' institute the suit, whereas, -under the language of the first paragraph of the statute, only the wife can be the plaintiff. Under the provisions of both the first and second paragraphs, the plaintiff must necessarily have returned to his residence or domicile in this state, as a condition precedent to
 
 the right to institute
 
 the 'suit, stand in judgment, and the right to be granted the separation or divorce. Two of the requirements of the statute of 1934, in creating the new grounds for divorce, are
 
 that the husband or wife must have returned to this state and must have lived separate and apart from the other for a period of two years.
 

 Personal and substituted service of process are provided for in the closing sentence of paragraph 2 of the act of 1934.
 

 Paragraph 3, which deals exclusively with suits against absent defendants and provides for service of process through an attorney appointed by- the court, and contains the express language that
 
 "the plaintiff shall be entitled to all the remedies and conservatory measures granted by law to married women"
 
 follows paragraph 2. (Italics ours.)
 

 Section 2, or the last paragraph of the statute (Act No. 1 of 1934, 2d Ex.Sess.), is the general repealing clause. .
 

 It is significant that the Legislature, in retaining paragraph 2 of article 142, as amended by Act No. 113 of 1920, changed its position from following the first paragraph dealing with cases of abandonment and cruel treatment, and made it follow the provisions creating a new or additional ground for divorce contained in paragraph 2 of the act of 1934.
 

 If it had been the intention of the Legislature to have paragraph 3 of the act of 1934 apply only to cases arising under the provisions of paragraph 1 of that act, there would have been no necessity to change its position. This is made clear when it is noted that the concluding sentence of paragraph 2 of the act of 1934 specially provides for service of process on a curator ad hoc in the event the defendant is absent from the state. We, therefore, conclude that it was the intention of the Legislature that paragraph 3 of the act of 1934 should apply equally to cases arising under paragraphs 1 and 2 of the statute.
 

 It appears to us that it was no mere accident that the Legislature made this change in the position of that particular paragraph and that it had a purpose in doing so. If plaintiff were a woman who lived in Louisiana, married here, and went to live with her husband in another state or country, • where he abandoned her, or mistreated her, and she asserted a cause of action under the -provisions of the statute, or, if she alleged a case under the new or second paragraph of the act,
 
 but made the allegation in her petition that she had not returned'to her residence or domicile in this state, or the place ivhere the marriage was contracted in Louisiana, except to bring the suit,
 
 the court would be powerless to grant her a separation from bed and board, or a divorce, or any of the remedies or conservatory measures incidental to such suits, because bona fide resi
 
 *601
 
 dence in Louisiana, by the plaintiff, is sacramental under the statute, to vest any rights in the plaintiff and to give the court any authority to act.
 

 In the case of Hyman, Lichtenstein & Co. v. Schlenker & Hirsch, 44 La.Ann. 108, at pages 111, 120, and 122, 10 So. 623, 624, we find the following:
 

 “This appeal presents for our determination a contest between the attaching creditors of a non-resident debtor and the non-resident wife of the debtor, who claims the property attached by virtue of a dation en paiement made to her by her husband while they were both non-residents of Louisiana, and domiciled in the state of Mississippi. * * *
 

 “These funds, though accruing to the wife in Louisiana, were received by her as a citizen of Mississippi, and her rights thereto were governed by the law of Mississippi. They never acquired the character of paraphernality under the laws of Louisiana, and the husband’s conversion of them subjected him only to the liability imposed by the law of the domicile.
 

 “It is urged, however, by the learned counsel for the wife, that these general principles are' controlled by the special provisions of article 2437 of our Civil Code, which is as follows:
 

 o “ ‘Whenever a marriage shall have been contracted in this state, and the husband after said marriage shall remove, or shall have removed, 'to a foreign country with his wife, if the husband shall have behaved towards his wife in such foreign country in such a manner as would entitle her, under our laws, to demand a separation of property, it shall be lawful for her, on returning to' the domicile where her marriage was contracted, to institute a suit there against her husband, for the purpose above mentioned, in the same manner as if they were still domiciled in said place. In said case, an attorney shall be appointed by the court to represent the absent defendant, the plaintiff shall be entitled to all the remedies and conservatory remedies granted by the law to married women, and the judgment shall have force and effect in the same manner as if the parties had never left the state.’
 

 “We are of the opinion that this article is inapplicable for two reasons:
 

 “(1) The wife here has not returned ‘to the domicile where her marriage was contracted,’ within any reasonable intendment of the law. It is true she came to Louisiana and accepted this dation, and returned immediately to her domicile in Mississippi.
 

 ‘‘The law obviously means a return to the domicile for the purpose of living there under the •protection of its laws,
 
 and was intended only to dissolve the community, which articles 2399 and 2400, Civil Code, extend in favor of non-residents, and to protect her property and her future earnings from control or interference by her husband. This is rendered more clear by reference to the origin of the article. It is taken from Act No. 9 of 1855, which is as follows:
 

 “ ‘That,- whenever a marriage shall have been contracted in this state, and the husband, after such marriage, shall remove,
 
 *603
 
 or shall have removed, to a foreign country with his said wife, and shall behave, or have behaved, towards his wife in said foreign country in such a manner as would entitle her, under our laws,
 
 to demand separation from bed and board, or a separation of property,
 
 it shall be lawful for her, on returning to the domicile where her marriage was contracted, to institute a suit there against her husband for the purposes above-mentioned, in the same manner as if they were still domiciliated in said place,’ etc.
 

 “The compilers of the Code of 1870, in distributing these provisions to their appropriate headings, separated the provisions relating to separation from bed and board and those relating to a separation of property into two distinct articles, viz.,
 
 the above article 2437 and article 142. But these articles must still be construed together,
 
 and it is apparent that the same kind of removal to the former domicile is required to support an action for separation of property as to support one for separation from bed and board, and consequent divorce. It would hardly be supposed that a married woman domiciled in Mississippi could run over into the state of Louisiana for a day, without any intention of remaining here, or resuming her residence, institute an action for a separation from bed and board leading to divorce, return instantly to her Mississippi domicile, and claim a decree in such a case that any court in Christendom would grant or respect. We had occasion recently to consider the rights of a married woman in such a case, and the limitations upon her right to invoke the jurisdiction of her original matrimonial domicile. Smith v. Smith, 43 La.Ann. 1140, 10 So. 248.
 

 “No such case was contemplated by the ' law, which only intended to extend its protection to women married here, whose husbands, domiciled in another country, had so-mistreated them as to justify them in leaving the matrimonial domicile, and in returning to their former
 
 homes, to live under and to receive the protection of its laws.
 
 * * *
 

 . “The only proper pertinency of this statute is to .demonstrate that, outside of its exceptional provisions, the views we have herein expressed are correct,
 
 and that nonresident married women, though their marriage took place in this state, had not, independently of the statute, the right to bring an action
 
 for separation of property in this state, or to avail of similar relief extended by our laws in the
 
 protection of our oion married women.”
 
 (Italics ours.)
 

 Under the above recited hypothetical case, the court would not have any jurisdiction ratione materiae, and plaintiff could not recover alimony pendente lite in that proceeding. Peeples v. Land, 181 La. 925, 160 So. 631, supra. We may, therefore, inquire by what process of reasoning the wife, who is a nonresident defendant and does not claim to have ever lived in Louisiana, even up to the present time, it appearing that she is still a resident and a citizen of Georgia, could enjoy a greater right and recover alimony under the laws of Louisiana, which are designed for the purpose of protecting married women in this state, when she could not have recovered alimony, if she had been the plaintiff in this
 
 *605
 
 suit. A married woman, who appears as the plaintiff, must allege and show that she has returned to this state and establish her domicile and residence here, before she
 
 can have any right to have
 
 the court grant her the benefits of article 142. It is neither unreasonable nor unfair to require of the defendant nonresident wife to reside in Louisiana or offer to live with her husband in Louisiana, in conformity with her marital obligations, as required by article 120 of the Revised Civil Code, before granting to her the protection of our laws. (Italics ours.)
 

 It is said that the defendant nonresident wife is entitled to alimony pendente lite, whether she appears as plaintiff or defendant, because article. 148 of the Revised Civil Code, as amended by Act No. 130 of 1928, does not expressly limit the benefits of its provisions to residents of this state. Neither does it expressly extend its provisions to nonresidents. However, article 142 of the Revised Civil Code, as amended, does limit the right to the benefits of its provisions to those who reside in this state and expressly confers jurisdiction upon the courts of this state, because of the fact that the plaintiff in the suit is a resident of Louisiana. It further expressly limits the remedies and conservatory measures granted by law to married women, to the plaintiff in suits filed under that statute. In other words, the legislative limitation on remedies and conservatory measures incidental to the main demand in favor of the plaintiff, who is required to be a resident of Louisiana, is equivalent to the limitation of the right to be asserted through such remedies and conservatory measures.
 

 In the case of Union Cotton Manufactory v. Lobdell, 7 Mart.(N.S.) 108, the plaintiffs sued defendant on a promissory note and he pleaded prescription of five years. In affirming the judgment of the district court, and overruling the plea of prescription, the court said:
 

 “The law invoked to support the plea of prescription in the present case, on which the defendant mainly relies, is found in the 3505th article of the Louisiana code. It prescribes actions founded on instruments similar to that on which this suit is instituted, by the lapse of five years, to be reckoned from the day when they were payable. Previous to the promulgation of the code the prescription or limitation of actions like the present was thirty years. The arguments used by the counsel for the defendant in favor of this peremptory exception, have for their foundation the differences between the force and effect of laws relating to legal remedies and those which relate to rights; and a supposed distinction which should be recognized in the application of the former class to contracts made under the operation of foreign laws.
 
 It is difficult to perceive any substantial difference between a law which should attempt to destroy a right by taking away entirely the remedy by which it might have been enforced, and one which should attack directly the right itself.
 
 They would, in our opinion, be equally unjust, and violate in the same degree the rule,of interpretation, which denies to all laws a retroactive
 
 *607
 
 effect, to the prejudice of rights previously acquired.” (Italics ours.)
 

 The argument that, if we interpret the law to mean that only a plaintiff can enjoy the remedies and conservatory measures, would lead to the absurd conclusion that a husband, as plaintiff, could claim alimony from his wife is without merit, since the wording of the statute is that plaintiff shall have the remedies and conservatory measures of a married woman. The only sensible construction that can be placed upon the language is that, if the wife is the plaintiff, she shall have the "benefit of those remedies and measures, because she has established her residence in Louisiana, otherwise, she will not be entitled to them, because she has not availed herself of our law by remaining out of the state. Furthermore, the general law makes no provision for a man to recover alimony from his wife in a separation or a divorce case.
 

 In Lemonius v. Mayer, 71 Miss. 514, 14 So. 33, 35, we find the following language:
 

 “A primary rule of construction is that the legislature must be assumed to have meant precisely what the words of the law as commonly understood import, and this may be said to be the fundamental and controlling rule of construction.”
 

 In 59 C.J. 945, quoted under note 55, and cited from Ætna Life Ins. Co. v. Otis Elevator Co. (Test Case) (Tex.Civ.App.) 204 S.W. 376, we find the following:
 

 “Courts are not authorized to extend scope and application of statute merely because there is apparently no reason why right given in one case should not have been given in another.”
 

 In Hurry v. Hurry, 141 La. 954, 76 So. 160, 161, we said:
 

 “Act 269, 1916, p. 557, adds the fifth ground for divorce, namely, when married persons have been living separate and apart for a period of seven'years or more. * * *
 

 “The language of the act is clear and free from ambiguity. It says:
 

 “ ‘That when masried persons have been living separate and apart for a period of seven years or more/ etc. This language can convey but one meaning to the mind. If, as contended for by defendant, the Legislature meant to say that the period of seven years or more referred to in the act was to be after the passage and the promulgation of the act, the language would have been different. The court cannot add the words ‘after the promulgation of this Act/ ”
 

 See, also, Hava v. Chavigny, 143 La. 365, 78 So. 594.
 

 But it is said that to interpret article 142, as amended, so as to deny a nonresident defendant wife alimony pendente lite would be inequitable and harsh.
 

 Article 120 of the Revised Civil Code provides:
 

 “The wife is bound to live with her husband and to follow him wherever he chooses to reside;
 
 the husband is obliged to receive her and to furnish her with whatever is required for the convenience of life, in proportion to his means and condition.” (Italics ours.)
 

 
 *609
 
 Under article 142, as amended, the wife had a period of two years within which to comply with this requirement of the article. If she does not obey the mandate of the law, the statute in question in effect prescribes her right to return, because of her failure to join her husband, in violation of her obligation to do so. The law of this state simply requires of the wife that she present herself at the Louisiana domicile of the husband and demand that he receive and support her. If he refuses to receive her, the state places at her disposal, for her protection, all of the general laws of the state, including the remedies and conservatory measures granted by law to the married women who reside in this state. Clark v. Clark, 145 La. 740, 82 So. 875.
 

 It is not unreasonable to require of a nonresident wife that she present herself at the domicile of her husband in this state and request him to receive her (this also being required of resident married women), as indicative of her desire to have her status determined by the state of Louisiana, in conformity with its laws. Defendant in her rule for alimony does not allege that she ever came to this state with the desire of establishing her residence here, or reconciling with her husband, and, in fact, in this proceeding, as well as a former one, Peeples v. Land, supra, it appears that she failed to comply with article 120 of the Revised Civil Code, although she alleged that her husband abandoned her in Georgia, and attempted to have the court compel him to return to his former matrimonial domicile in Atlanta, Ga.
 

 Courts are not concerned with the wisdom of a legislative act, for they must construe its provisions as they are written. A mere reading of the amendment to article 142 of the Revised Civil Code shows that the members of the Legislature had in view the reconciliation of the divorced spouses to the first marriage, where there was offspring therefrom, and an estrangement between the spouses to the second marriage for two full years and no issue of the second union and no reconciliation. This is obviously sound public policy, wholesome and salutary, because it reconciles and unifies a family group where there are children, and the state is vitally interested in their welfare. In order to accomplish this laudable purpose, the Legislature required the father to support his offspring of the first marriage, and an affidavit by the wife of the first marriage that she had not married a second time, but was ready and willing to remarry her divorced husband and father of her children. This means that the father is placed in the position where he has the serious responsibility of maintaining, supporting, and educating his children and is about to voluntarily assume the like responsibility with reference to his first wife. If the nonresident wife, who was so utterly lacking in interest in her husband, that she has not lived with him for two full years, is to be granted alimony pendente lite, unless the husband has a splendid income, the whole practical purpose of the new part of the statute will be defeated, as it would be most difficult.to support them all and not inviting and encouraging for him to make
 
 *611
 
 the attempt, if the law placed upon him such a burdensome responsibility.
 

 There is no legal reason why a wife, who,
 
 without just cause,
 
 violates her marital vows in refusing to live with her husband, should be supported and maintained by him. Act No. 34 of 1902; article 120, Rev.Civ.Code; Cyclopedia of Law and Procedure, vol. 14, pp.
 
 746, 747.
 

 In order to grant the defendant wife alimony pendente lite in a suit brought by the husband under the provisions of article 142, Rev.Civ.Code, as amended, it appears to us that we would have to add to the act. the words “the wife either as plaintiff or defendant,” shall have a right to all of the remedies and conservatory measures granted to married women who are residents of this state. This is contrary to the clear provisions of the act. We have no right to add language to a statute under the guise or pretense of interpreting its unambiguous provisions.
 

 It is our opinion that the defendant nonresident wife is not entitled to the remedies or conservatory measures contained in the general law, which includes article 148 of the Revised Civil Code, as amended, providing for alimony pendente lite, because article 142, Rev.Civ.Code, as amended, a particular law and an exception to the general rule, does not give the nonresident defendant such a remedy, and the courts are powerless to supply it.
 

 The álternative plea of estoppel is based upon the fact that the plaintiff in his petition filed on January 18, 1935, alleged that, while his wife was not entitled to alimony, since she was earning $65 per month, he, nevertheless, tendered $35 a month, as alimony pendente lite, which was placed in the registry of the court.
 

 After all of the defendant’s pleas and exceptions had been overruled on April 4, 1935, and she was allowed fifteen days to answer, she did not do so, but, on April 18, 1935, filed a rule for alimony pendente lite for $150 per month, with full reservation of her pleas and exceptions which were overruled, including the one challenging the jurisdiction of the court ratione materiae. In the meantime, she had refused to accept the $35 a month deposit for alimony, and, on April 26, 1935, the plaintiff amended his petition, alleging that through error of law and fact he had tendered the $35 per month for alimony, when his wife was not entitled to it, as she had been maintaining herself for two years prior to the institution of the suit and had an independent income which she was still receiving.
 

 Plaintiff also filed a motion to withdraw the $140 which had accumulated as a result of the monthly deposits. The judge declined to enter an order allowing the withdrawal of the funds.
 

 When the rule to fix alimony pendente lite was called for trial on May 9, 1935, plaintiff interposed the exceptions of no right or cause of action hereinbefore explained, and the district judge overruled them.
 

 Article 2291 of the Revised Civil Code reads as follows:
 

 
 *613
 
 “The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
 

 “It amounts to full proof against him who has made it.
 

 “It can not be divided against him.
 

 “It can not be revoked, unless it be proved to have been made through an error in fact.
 

 “It can not be revoked on a precence of an error in law.”
 

 The interpretations placed upon this article by this court, while not uniform and clear in some respects, are consistent in that it must be shown that the party litigant has relied upon the judicial confession to his prejudice, before a plea of estoppel will be maintained.
 

 In the case of Farley et al. v. Frost-Johnson Lumber Co., 133 La. 497, 63 So. 122, 136, L.R.A. 1915A, 200, Ann.Cas. 1915C, 717 this court, in considering a plea of estoppel based upon article 2291, R.C.C., said:
 

 “Finally, in the recent case of Nora Coleman et al. v. Jones & Pickett, [131 La. 803], 60 So. 243, this court, after a review of the authorities, held that a judicial allegation, which has not been acted on, which has led no one astray, does not operate as an estoppel, even as between the parties and with reference to the same subj ect-matter.”
 

 In the case of Imhof v. Imhof, 45 La. Ann. 706, 13 So. 90, the court held that judicial admissions would be considered waived or renounced unless insisted upon' through a plea of estoppel by the party in whose favor they were made.
 

 In the instant case the record shows that the defendant in no way relied upon the plaintiff’s allegations, but repudiated them. She declined to accept the alimony tendered and interposed no objection to the plaintiff amending his original petition, by stating that he had offered the alimony pendente lite through error of law and fact. The trial judge entered the proper order permitting the filing of the supplemental and amfended petition and all of this was done before the defendant filed any answer, which the record discloses she has never filed. She filed a separate rule against the plaintiff with full reservation of all of her previously overruled exceptions and pleas, and particularly as to the jurisdiction of the court ratione materias, and prayed that the plaintiff be condemned to pay her $150 per month alimony pendente lite. There is nothing stated in this rule about the plaintiff being- estopped to deny liability for alimony. In response to this rule, the plaintiff squarely placed at issue the right of defendant to alimony, by his exceptions of no right or cause of action.
 

 The right to alimony pendente lite is not an absolute one in favor of the wife, for she must show that she comes under the law which would entitle her to it. Even in the cases where she has been granted alimony, it is subject to revision by the court from time to time, as the circumstances of the parties change. Ramos v.
 
 *615
 
 Ramos, 173 La. 407, 137 So. 196; Abrams v. Rosenthal, 153 La. 459, 96 So. 32.
 

 The allegations of the plaintiff’s petition, in substance, are that the wife is not entitled to alimony, because she has a separate income sufficient to maintain her in her usual position in life, but-that plaintiff tendered $35 per month, as alimony pendente lite. It is obvious that this statement involves both questions of fact and conclusions of law. Plaintiff might well have made an error in fact in stating that his wife enjoyed sufficient income for her maintenance pending the suit. The statement that she was not entitled to alimony was a conclusion of law.
 

 The codal article expressly provides that the judicial 'confession cannot be divided against him. Defendant is seeking to divide the judicial admission by taking advantage of the part that is beneficial to her and repudiating the part that she considers is unfavorable to her. On the question of liability for alimony, she would have the court hold that his (plaintiff’s) allegation estopped him from contesting that point, but, as to the amount to be awarded, his statement that $35 per month is adequate is to be rejected. We do not believe that defendant is entitled, under the express provisions of the. article, to have the court make such a ruling.
 

 It is our opinion that the contention that the plaintiff is estopped by the alleged judicial confessions is untenable.
 

 Relator, in his application for writs to this court, prayed that the district judge be directed to enter the proper order for the withdrawal of $140 tendered as alimony pendente lite and deposited in the registry of the court. In view of our above conclusions, he is entitled to this relief.
 

 For the reasons assigned, ‘ the judgment of the district court is annulled, the rule nisi made absolute, and the writs perpetuated, the exceptions of no right or cause of action are maintained, and the rule filed by the defendant wife, for alimony pendente lite, is dismissed, and the trial judge directed to enter the proper order authorizing the withdrawal of $140 from the registry of the court, to be paid to the plaintiff herein; plaintiff to pay the costs of this court
 

 ROGERS and ODOM, JJ., dissent.
 

 O’NIELL, C. J., dissents and will hand down reasons.
 

 LAND, J., recused; BOND, J., sitting by appointment.